*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

D. ETTA WILCOXON,

      Plaintiff-Appellant,

v

CATHY M. GARRETT, GIL FLOWERS, and
JANICE WINFREY,

      Defendants-Appellees.

UNPUBLISHED
July 22, 2026
8:59 AM

No. 375547
Wayne Circuit Court
LC No. 24-007307-CZ

---

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

In this action, plaintiff, D. Etta Wilcoxon, brought claims involving alleged violations of the Michigan Election Law (MEL), MCL 168.1 *et seq*., and the Michigan Campaign Finance Act (MCFA), MCL 169.1 *et seq*., against election officials for both Wayne County and the city of Detroit.[1] Defendants Cathy M. Garrett and Gil Flowers (hereinafter collectively referred to as the "county officials") moved for summary disposition of the claims against them under MCR 2.116(C)(8), for failure to state a claim upon which relief could be granted. Defendant Janice Winfrey concurred in the county officials' motion. The trial court granted the motion on April 3, 2025, dismissing the claims against the county officials with prejudice. Further, on April 23, 2025, the trial court dismissed the claims against defendant Winfrey with prejudice. Plaintiff appeals as of right from the order of April 23, 2025, which is the final order in this matter. We affirm.

## I. BACKGROUND

In May 2024, plaintiff filed a complaint seeking declaratory judgment against defendants related to plaintiff's candidacy for the 2024 general election. Plaintiff alleged that the county officials should have waived late filing fees plaintiff owed for her earlier campaigns because she

---

[1] Plaintiff sued each individual in their official capacity: Cathy M. Garrett, as Wayne County Clerk; Gil Flowers, as Wayne County Campaign Finance Manager; and Janice Winfrey, as Detroit City Clerk.

established her right to waiver of the past-due filing fees. Plaintiff also alleged that Winfrey violated MCL 168.560b because plaintiff's full first name was used in media reports about the election, which did not match how plaintiff requested that her name appear on the ballot.

In August 2024, Garrett disqualified plaintiff from the November 2024 general election because plaintiff owed over $25,000 in late filing fees and fines for her earlier campaigns when she ran for Detroit city council and Detroit city clerk. Garrett also found that plaintiff falsely stated in her affidavit of identity that she had paid all late filing fees and fines. Therefore, plaintiff was not permitted to appear on the ballot as the Green Party candidate for the United States House of Representatives.

Before the November 2024 election, plaintiff moved for a writ of mandamus and an order to have the county officials show cause why plaintiff's name should not appear on the 2024 general ballot. Plaintiff argued that the county officials previously waived enforcement of any outstanding fees she owed or that the county officials were estopped from enforcing the late campaign fees, some of which dated back to 2005. The trial court disagreed with plaintiff's arguments and concluded that the county officials did not err in ruling that plaintiff was disqualified from the ballot because plaintiff did not prove her entitlement to have the late fees waived under MCL 169.215(1)(f).

After the November 2024 election, the county officials moved for summary disposition for plaintiff's failure to state a claim upon which relief could be granted, MCR 2.116(C)(8), arguing that plaintiff's claims were moot because the election had already occurred and there was no longer an actual controversy. The county officials further argued that plaintiff failed to establish a right to have her past-due filing fees waived. Winfrey concurred in the county officials' motion. The trial court agreed that there was no actual controversy because the election had passed and plaintiff's complaint was limited to her candidacy in 2024. Nonetheless, the trial court addressed the merits of plaintiff's claims and ruled that plaintiff had failed to show that the county officials erred by refusing to waive past-due filing fees, MCL 169.215(1)(f). The trial court also determined that there was no actual controversy regarding plaintiff's claim against Winfrey. Accordingly, the trial court dismissed plaintiff's claims against the defendants in their entirety with prejudice. This appeal follows.

## II. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is available under MCR 2.116(C)(8), for failure to state a claim upon which relief could be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim based on the factual allegations in the complaint. *Id*. at 159. When considering a motion under (C)(8), the trial court must accept all factual allegations as true and decide the motion on the pleadings alone. *Id*. at 160. The motion may only be granted when the claim is so clearly unenforceable that no factual development could possibly justify recovery. *Id*.

"Whether an issue is moot is a question of law that this Court reviews de novo." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). Lastly, we review a trial court's

decision on a motion to amend a complaint for abuse of discretion. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024).

## III. ANALYSIS

On appeal, plaintiff argues that the trial court should not have granted summary disposition under MCR 2.116(C)(8) by allowing the County to retroactively apply an administrative rule adopted in 2022, which disqualified plaintiff from the general ballot in November 2024 because of her failure to pay past-due filing fees incurred before 2022, and because plaintiff established good cause to support her requests to waive past-due filing fees she still owed. Plaintiff also argues that the trial court should not have dismissed her claims against Winfrey because Winfrey violated MCL 169.560b. Defendants argue that plaintiff's claims are moot and without merit. We address each in turn.

### A. CLAIMS AGAINST THE COUNTY OFFICIALS

### 1. MOOTNESS & AMENDMENT

Defendants argue that this action is moot because plaintiff stated in her complaint that she was a candidate only for the November 2024 general election and by the time the trial court ruled on the motion for summary disposition, that election had already been held. This Court will not reach moot issues, because there must be a real controversy between the parties, not a hypothetical one. *In re Detmer/Beaudry*, 321 Mich App 49, 55-56; 910 NW2d 318 (2017). An issue is moot if this Court's decision would not have any practical legal effect on the existing controversy or a subsequent event renders it impossible for this Court to fashion a remedy. *Garrett v Washington*, 314 Mich App 436, 449-450; 886 NW2d 762 (2016).

MCR 2.605(A)(1) provides that, "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." However, without an actual controversy, a trial court lacks jurisdiction to issue a declaratory judgment. *McGill v Auto Ass'n of Mich*, 207 Mich App 402, 407; 526 NW2d 12 (1994). In the context of an action seeking declaratory judgment, an actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights. *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978). Where the injury sought to be prevented is only hypothetical, an actual controversy does not exist. *Recall Blanchard Comm v Secretary of State*, 146 Mich App 117, 121; 380 NW2d 71 (1985). The plaintiff must allege and prove an actual justiciable controversy. *Shavers*, 402 Mich at 589.

When the trial court ruled on plaintiff's motion for a writ of mandamus, it generally addressed the merits of plaintiff's request for a declaratory judgment shortly before the election. When the county officials later moved for summary disposition, the election had already occurred. Accordingly, there was no actual controversy as a trial court order granting plaintiff relief surrounding her candidacy for an election that had already occurred would have no practical effect. See *Garrett*, 314 Mich App at 449-450. Therefore, the trial court correctly granted summary disposition for defendants regarding plaintiff's claims involving the 2024 election.

However, because the trial court granted summary disposition under MCR 2.116(C)(8), the trial court was obligated to consider whether plaintiff should be permitted to amend her complaint. MCR 2.116(I)(5) provides that when a court is asked to rule on a motion brought under MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

Before the trial court ruled on the motion for summary disposition, plaintiff filed a motion to amend her complaint. However, for unknown reasons, the trial court did not rule on the motion to amend. In her proposed amended complaint, plaintiff alleged that she intended to run in the 2026 general election, and all subsequent elections, which showed that there was an actual controversy. Plaintiff also advised the trial court, when the trial court granted defendant's motion for summary disposition, that she had taken steps to become a candidate in 2026. Therefore, because plaintiff will continue to have problems running for public office in the future, until the issues with her late filing fees are resolved, it is apparent that there continues to exist an actual controversy between the parties. Plaintiff may also face real injury in the future, by not having her name on the ballot in other elections. Accordingly, the trial court erred when it failed to address whether plaintiff could amend her complaint.

Nonetheless, the amendment of the complaint was not justified. The amendment of a party's pleadings is not justified if it would be futile. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003). "A determination of futility must be based on the legal insufficiency of the claim on its face." *Id*. at 139. Where the amended claim merely restates allegations already made, it is considered futile. *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006).

Plaintiff continued to argue in her proposed amended complaint that she was entitled to have her late filing fees waived for the reasons she included in her original complaint. But as discussed later, the trial court properly granted judgment for the county officials with regard to its decision not to waive the fees, due to lack of good cause. Therefore, plaintiff has not shown that the trial court's failure to rule on her motion to amend her complaint prejudiced plaintiff because her amended complaint was not justified.

## 2. MICH ADMIN CODE, R 168.2

Turning to the merits of plaintiff's claims, plaintiff argues that the county officials improperly disqualified her from the ballot in 2024 by retroactively applying Mich Admin Code, R 168.2 to late fines and filing fees owed by plaintiff, which were imposed before the new rule went into effect in 2022. We disagree.

Rule 168.2 provides, in relevant part, as follows:

(1) For the purposes of the candidate's statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid, an outstanding notice of error or omission is not a statement, report,

-4-

late filing fee, or fine for the purposes of section 558(4) of the Michigan election law, 1954 PA 116, MCL 168.558. A candidate with an outstanding notice of error or omission may be disqualified based on the unfiled or unpaid statement, report, late filing fees, or fines upon which the notice was based.

\* \* \*

(3) The filing official shall examine the campaign finance records of the secretary of state and county clerk for any county in which the candidate previously sought nomination or election, if applicable, to determine whether the candidate made a false statement in the affidavit of identity.

(4) *The filing official shall disqualify a candidate who falsely states that as of the date he or she signed the affidavit of identity, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid.* Candidates disqualified on this basis cannot reverse disqualification by filing a corrected affidavit. [Emphasis added.]

MCL 168.558 also provides that candidates are required to file accurate affidavits of identity, subject to perjury, and that an officer must not certify a candidate who files a false affidavit of identity. Amendments have been made to both MCL 168.558(4) and Rule 168.2(3) to specifically provide that candidates who file false affidavits of identity are not to be certified and to require that officials check state and county records to ensure that a candidate has made accurate statements in the affidavit. However, the requirements that candidates pay late filing fees and accurately attest that any late fees have been paid are not newly imposed duties on candidates for public office.

Plaintiff's primary argument is that Rule 168.2(3) adopts a new duty for election officials to affirmatively check a candidate's affidavit of identity before certifying that candidate for an election; therefore, Rule 168.2 should not apply to her because the records show that she owed late filing fees dating back to at least 2013, and possibly even 2005, before the rule went into effect. However, even if Rule 168.2(3) imposes new obligations on election officials, it does not adopt new legal obligations for candidates or impact candidates' vested rights. The adoption of Rule 168.2 does not impose new requirements on candidates, or adopt new penalties for false affidavits of identity, because candidates have been required to make truthful statements in their affidavits of identity even before December 2022. Although Rule 168.2(3) now expressly requires that an officer must compare statements in an affidavit of identity to campaign records for the state and county before certifying a candidate, we do not agree with plaintiff that Rule 168.2(3) does not apply to her.

Moreover, Rule 168.2 was not retroactively applied to plaintiff. In *Warren City Council v Buffa*, 346 Mich App 528, 548; 12 NW3d 681 (2023), this Court explained that legislative amendments are prospective only, unless the Legislature indicates an intent to apply an amendment retroactively. Retroactive application is disfavored if (1) it would impair vested rights, (2) create a new obligation and impose a new duty, or (2) attach a disability to past transactions. *Id*. Because

the retroactive application of an amended statute may cause unfairness by upsetting settled transactions or depriving individuals of legitimate expectations, a statute applies retroactively if it does not impact vested rights. *Id*.

However, considering events that occurred before a rule was enacted does not in and of itself constitute retroactive application. *Id*. at 549-550. The *Buffa* Court rejected the argument that an amendment to a city charter, barring the mayor of Warren from serving the greater of three terms or 12 years, could not apply to the then mayor, who had already served four terms and was running for his fifth term. *Id*. at 532, 548-550. The term limit was added by an amendment in 2020, but provided that any terms or years served before the amendment was adopted would count toward an individual's term limit. *Id*. at 534. This Court relied on the following factors in its analysis of whether the amendment was intended to apply retroactively:

> First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. [*Id*. at 549, quoting *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 38-39; 852 NW2d 78 (2014).]

Applying the above factors, this Court explained that the amendment to the city charter did not apply retroactively, but that did not prevent the mayor's previous terms from being counted under the terms of the amendment. The inclusion of antecedent events did not render the amendment retroactive. *Buffa*, 346 Mich App at 549-550. Furthermore, there was no effort to apply the amendment against the then mayor, by removing him from office in his fourth term. *Id*. at 550. This Court held that the amendment need not apply retroactively in order to account for the terms previously served by the mayor. *Id*.

As discussed, applying the amendments to both MCL 168.558 and Rule 168.2, adopted after plaintiff incurred the disputed late filing fees, does not impact any vested rights of plaintiff, because before those amendments were adopted, plaintiff still was required to file her affidavit of identity, under penalty of perjury, affirmatively stating that she had paid all outstanding late fees and filed all campaign reports. Before Rule 168.2 was adopted, election officials were also required to review affidavits of identity and disqualify those candidates who submitted false affidavits. Accordingly, while plaintiff may have appeared on ballots in the past when she owed late filing fees, that did not give her a vested right to continue to appear on ballots after Rule 168.2 was adopted, requiring that election officials perform some investigation into the status of each candidate's campaign finance records history before certifying the candidate's name to appear on a ballot. Similar to the amendment in *Buffa*, 346 Mich App at 549-550, Rule 168.2 does not apply retroactively, but election officials may rely on antecedent events, including records of a candidate's failure to pay filing fees.

Therefore, the trial court did not err when it agreed with the county officials' decision to disqualify plaintiff because of her past-due filing fees.

### 3. WAIVER OF FEES

Plaintiff next argues that the county officials should have waived her obligation to pay the fees assessed, per MCL 168.215(1)(f). We disagree.

MCL 169.215(19)(d) provides that, "[t]he clerk of each county shall do all of the following: . . . (d) Upon written request, waive the payment of a late filing fee if the request for a waiver is based on good cause as prescribed in subsection (1)(f)." Notably, MCL 169.215(1)(f)(*i*) provides that "incapacitating physical illness, hospitalization, accident involvement, death, or incapacitation for medical reasons of a person required to file, a person whose participation is essential to the preparation of the statement or report, or a member of the immediate family of these persons" constitutes good cause. Plaintiff is correct that MCL 169.215(1)(f) uses the term "shall," which is mandatory, *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017), MCL 169.215(1)(f). However, MCL 169.215(1)(f) only requires that the county clerk grant a waiver when there is good cause and adequate documentation. Because both of those requirements have not been established by plaintiff, the county officials were not under a mandatory duty to grant her requests for waivers.

Here, plaintiff offered two grounds for waiver of her late filing fees. First, she produced a letter from her personal physician, dated August 27, 2015, that states that plaintiff suffered from a gastrointestinal condition which prevents her from sitting for long periods of time. Second, plaintiff offered the death of her campaign treasurer as good cause for waiving her late fees. We conclude that neither established good cause to waive the late fees.

The letter from plaintiff's physician indicated that plaintiff suffered from a medical condition in August 2015 that limited her ability to sit for long periods of time. However, the letter does not explain whether the condition existed beyond 2015 and would have impacted her ability to make the required filings. Moreover, it is not apparent that the inability to sit for long periods prevented plaintiff from completing the appropriate paperwork, for instance, if she took frequent breaks or had assistance. Accordingly, plaintiff's letter from her physician did not prove good cause to waive the late fees, even those due in 2015.

The death of plaintiff's campaign treasurer also does not prove good cause for not timely filing all the paperwork due over multiple years. First, plaintiff has not produced adequate documentation to prove that the death impacted the ability to file the necessary reports. Despite plaintiff providing her own affidavit, she failed to establish when the treasurer died and that only the treasurer had access to the information necessary to file campaign finance reports. Further, the record demonstrates that plaintiff has since formed other committees for her subsequent campaigns; therefore, the treasurer's death does not give her good cause for not filing other campaign reports.

Plaintiff also seems to allege that Flowers, and other staff working for the County, prevented plaintiff and her campaign staff from filing the necessary paperwork, primarily because they were given inaccurate passwords, presumably so they could electronically file the necessary reports. Plaintiff produced an affidavit from another campaign staffer, who described his problems with filing a single report in 2017, which he eventually was able to file in person. Again, given the amount of time that has passed and plaintiff's other campaign committees, the problems

plaintiff's staff experienced in 2017, filing a single report, do not prove good cause for waiving fees due in other campaigns.

Lastly, plaintiff raises arguments regarding waiver, laches, and statute of limitations to support her claims. These arguments are primarily based on the fact that the County allowed plaintiff to appear on ballots in the past, when she already owed late fees, and the county officials are only now taking action against delinquent candidates.

Specifically, plaintiff relies on laches to argue that the county officials should be barred from enforcing Rule 168.2 against plaintiff, when the grounds for keeping her off the ballots include late fees that were assessed well before 2022. "Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time." *Nykoriak v Napoleon*, 334 Mich App 370, 382; 964 NW2d 895 (2020) (quotation marks, brackets, and citations omitted). In practical terms, "laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier." *Id*.

Here, plaintiff has not properly demonstrated that laches should have applied to the county official's decision to disqualify plaintiff. Plaintiff essentially blames the county officials for waiting to punish her for not paying her late fees for many years. But it does not make sense to apply laches to the county officials and allow plaintiff to appear on future ballots, because it is undisputed that she had not paid past-due filing fees for years. Courts will not apply the equitable doctrine of laches to a party who has "unclean hands." *Davis v Secretary of State*, 346 Mich App 445, 463; 12 NW3d 653 (2023). Further, before applying laches, courts consider any possible injury to the public. *Id*. Allowing plaintiff to refuse to pay late fees for many years and still be treated the same as other candidates who have paid outstanding fees, would not be in the public interest.

Plaintiff also argues that the county officials waived enforcement of any late fees. Waiver consists of the intentional relinquishment of a known right. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 254; 776 NW2d 145 (2009). The party asserting waiver has the burden of proof. *Id*. at 255. Before Rule 168.2 was adopted in 2022, county clerks were not required to look beyond an affidavit of identity to certify a candidate. Accordingly, before 2022, clerks may have only refused to certify a candidate if statements in the affidavit were clearly false. There is no merit to plaintiff's argument that the county officials should not be permitted to enforce Rule 168.2 against her because plaintiff was allowed to appear on past ballots when she owed past-due late fees. Clerks were not instructed by the secretary of state to review records related to past-due campaign finance fines before certifying a candidate before 2022. The County imposed late fees against plaintiff, but the county officials did not take action against her candidacy until 2024, after Rule 168.2 went into effect in 2022. These facts do not support a finding that the county officials intentionally waived any of its rights with regard to penalizing plaintiff for failing to pay late fees.

To the extent that plaintiff also raises a statute of limitations argument, she has not demonstrated that she is entitled to relief. Even assuming, without deciding, that a six-year limitations period applies to the collection of outstanding campaign fees and fines, MCL 600.5813, plaintiff has not demonstrated that all the fees and fines imposed would fall outside of the six-year

window predating 2024. Plaintiff has also not established that fees or fines no longer collectable are not subject to the reporting requirements of MCL 168.558(4), i.e., that those outstanding fees must be acknowledged in the affidavit. Accordingly, the trial court did not err when it determined that plaintiff was not entitled to have her unpaid filing fees waived.

## B. CLAIM AGAINST WINFREY

Plaintiff's only claim against Winfrey arises from how plaintiff's name appeared on the ballot for the Detroit mayoral election in 2021. Plaintiff preferred to use only her first initial and her middle name, rather than have her full first name appear on the ballot. Plaintiff alleged that Winfrey released plaintiff's name to the media as "Dallias Wilcoxon," rather than plaintiff's preferred iteration of "D. Etta Wilcoxon." To support her claim, plaintiff provided her own affidavit, dated May 13, 2024, in which she stated that her name appeared in the press differently than what she had requested through Winfrey's office; two news articles from 2021 stating that "Dallias Wilcoxon" was a candidate; and a copy of the proof ballot from the City, in which plaintiff's name was to appear as "D. Etta Wilcoxon," in the August 2021 primary for mayor.

MCL 168.558(1) states that when filing a nominating petition, qualifying petition, filing fee, or affidavit of candidacy for office in any election (other than a presidential election), a candidate must file with the local filing officer, or the secretary of state when nominated at a convention, two copies of an affidavit of identity. Among the personal information that should be included in the affidavit of identity is "the manner in which the candidate wishes to have his or her name appear on the ballot." MCL 168.558(2). See also MCL 168.560b.

Plaintiff argues that Winfrey violated MCL 168.560b because she released plaintiff's full legal name to the media in the spring of 2021, when candidates were just starting to campaign for the August 2021 primary. Although plaintiff is correct that she had a right to request how her name should appear on the ballot, per MCL 168.560b, there is nothing in that statute that regulates how election officials should release the names of individuals who were not yet candidates and were in the process of taking steps to appear on a ballot months later. Notably, plaintiff does not dispute that her name was correctly included on the 2021 ballot.

Further, plaintiff's factual allegations against Winfrey involve how plaintiff's name appeared in press releases or election records in 2021. Therefore, this claim appears to be limited to only the 2021 election, and the trial court properly ruled that there was no actual controversy with regard to plaintiff's allegations against Winfrey because the election had already occurred. See *Garrett*, 314 Mich App at 449-450. Further, plaintiff did not propose amending her complaint to add any new allegations involving Winfrey's preparation of ballots but simply reiterated her allegations that Winfrey had previously released information about plaintiff without using her preferred iteration of her name. As plaintiff's proposed amended complaint merely reiterates her claims against Winfrey, any amendment of the complaint was futile. See *PT Today*, 270 Mich App at 143.

Accordingly, the trial court properly dismissed this part of plaintiff's complaint, even if the trial court erred by not first reviewing plaintiff's proposed amended complaint.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young